UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

JOES SUAREZ VELEZ,

                                                  Plaintiff,

    -against-

THE CITY OF NEW YORK, a municipal entity; and New York City Police Officers ANTHONY HYDE (Shield 8392), in his individual and official capacity, and "JOHN and/or JANE DOES" 1, 2, 3, etc. (whose identity are unknown but who are known to be personnel of the New York City Police Department), all of whom are sued in their individual capacities.

                                               Defendants.

------------------------------------------------------------------ X

**VERIFIED COMPLAINT**

**JURY TRIAL**

Plaintiff JOES SUAREZ VELEZ, by his attorneys Beldock Levine & Hoffman LLP, as and for his complaint against the defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1.     This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State law for injuries plaintiff suffered from the unconstitutional conduct of defendants THE CITY OF NEW YORK, and New York City Police Officers ANTHONY HYDE (Shield 8392) and "JOHN and/or JANE DOES" 1, 2, 3, etc.

2.     On February 5, 2015, plaintiff was unlawfully pulled over while driving his girlfriend's car in the Bronx. Without probable cause, defendant officer conducted a full search of the car's interior and found a billy club. The billy club belonged to plaintiff's girlfriend, a licensed security guard who used it in the course of her employment. Plaintiff was arrested for criminal possession of a weapon. Following plaintiff's arrest, his girlfriend went to the precinct with

documentation showing that she lawfully owned both the vehicle and the billy club. Defendant Officers ignored her and, as a result, plaintiff was unlawfully imprisoned for approximately 24 hours until the baseless criminal charges were dismissed.

3. Plaintiff seeks redress for substantial injuries he suffered when he was unlawfully stopped, detained, and arrested. Plaintiff seeks (i) compensatory damages for psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

5. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

6. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiff's claims took place.

## JURY DEMAND

7. Plaintiff demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## THE PARTIES

8. Plaintiff JOES SUAREZ VELEZ is a citizen of the United States and the State of New York, and was at all times relevant to this complaint a resident of State of New York, City of New York and Bronx County.

9. Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

10. The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11. Defendants ANTHONY HYDE ("HYDE") (Shield No. 8392) and JOHN and/or JANE DOES 1, 2, 3, etc. ("DOES") are NYPD Police Officers who unlawfully stopped, detained, and arrested plaintiff without suspicion of any illegal activity and lodged false criminal charges against him.

12. Upon information and belief, defendants HYDE and DOES are still NYPD Police Officers.

13. At all times relevant herein, defendants HYDE and DOES have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

14. At all times relevant herein, defendants HYDE and DOES violated clearly established rights and standards under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in their circumstances would have known.

## STATEMENT OF FACTS

15. Plaintiff is a lifelong resident of the Bronx, New York.

16. On February 5, 2015, plaintiff, a licensed New York State driver, was driving a 2010 Kia Soul owned by his girlfriend at the time, Iesha Rentas.

17. At all times relevant herein, Ms. Rentas was a security guard licensed by the State of New York.

18. Upon Ms. Rentas' consent, plaintiff borrowed the car to take his mother to a doctor's appointment the following day.

19. After picking up his brother from work on Webster Avenue in the Bronx, plaintiff was driving south on Valentine Avenue toward their mother's home, also in the Bronx.

20. At approximately 8:00 P.M., plaintiff was stopped at a red light behind one car at the intersection of Valentine Avenue and East 181st Street.

21. After the light changed to green, the car in front of plaintiff did not move.

22. Plaintiff flashed his lights multiple times from normal to high beams to alert the driver that the light had changed to green.

23. Eventually, the car in front of plaintiff's car proceeded through the intersection.

24. Plaintiff then continued driving south on Valentine Avenue.

25. While driving through the intersection of Valentine Avenue and East 181st Street, plaintiff noticed a marked NYPD car waiting at the light on East 181st Street.

26. The NYPD car turned on its lights and sirens and made a right onto Valentine Avenue, directly behind plaintiff.

27. Plaintiff pulled over to the southwest corner of Valentine Avenue and East 180th Street.

28.     The NYPD car pulled up behind plaintiff's car and stopped.

29.     Officers HYDE and DOE got out of their car and approached plaintiff's car — HYDE on the driver's side and DOE on the passenger's side

30.     Plaintiff put down the driver's side and passenger's side windows as the officers approached the vehicle.

31.     Officer HYDE asked plaintiff for his license and the vehicle's registration.

32.     While in the process of complying with Officer HYDE's request, plaintiff asked why he had been stopped.

33.     Officer HYDE responded, in sum and substance, "For driving without your headlights and tinted windows."

34.     Plaintiff responded, in sum and substance, "the headlights were on."

35.     Without cause, Officer HYDE ordered plaintiff and his brother out of the vehicle.

36.     Although lacking reasonable suspicion of criminal activity, Office HYDE searched plaintiff after he stepped out of the car.

37.     Officer HYDE did not find any illegal objects on plaintiff.

38.     Following the search, Officers HYDE and DOE ordered plaintiff and his brother to stand between plaintiff's vehicle and the NYPD car.

39.     While Officer Doe stood with plaintiff and his brother, Officer HYDE, without lawful justification or plaintiff's consent, conducted a search of plaintiff's vehicle.

40.     Plaintiff did not know that Ms. Rentas had stored her billy club in the car.

41.     After several minutes, Officer HYDE emerged from the vehicle with Ms. Rentas's billy club.

42. Officer HYDE stated to plaintiff and his brother, in sum and substance, "If one of you doesn't admit to this I'm fucking taking you both in."

43. Plaintiff explained that the vehicle's owner is a state licensed security guard who carries a billy club for work.

44. Officer DOE stated to Officer HYDE that he thought they should not arrest plaintiff or his brother and let them go.

45. Plaintiff and his brother were ordered by the officers to go back into their car and wait.

46. Plaintiff and his brother complied with the officers' order.

47. Officers HYDE and DOE went back to their patrol car.

48. Approximately one half hour later Officers HYDE and DOE exited their car.

49. Officer HYDE approached the driver's side window and ordered plaintiff out of the car.

50. Officer HYDE then opened the driver's side front door, forcefully removed plaintiff from his seat, and shoved him face first against the vehicle.

51. Officer HYDE ordered plaintiff to put his hands behind his back.

52. Plaintiff asked Officer HYDE why this was happening.

53. Officer HYDE responded, in sum and substance, "because there was a weapon in the car."

54. Officer HYDE applied handcuffs on plaintiff with so much force and so tight that he experienced immediate pain in his wrists, hands, and fingers.

55. Plaintiff complained to Officer HYDE that the handcuffs were too tight and causing him pain and discomfort on several occasions.

56. Officer HYDE repeatedly ignored plaintiff's plea to loosen the handcuffs resulting in great pain to his wrists, hands, and fingers.

57. While Officer HYDE was handcuffing plaintiff, his brother exited the car.

58. Plaintiff's brother asked Officer HYDE if he could call his brother's girlfriend to confirm that she owned the vehicle and the billy club.

59. Officer HYDE did not object.

60. Plaintiff's brother called plaintiff's girlfriend.

61. He explained that they had been pulled over by the police and that one officer found a billy club in her car.

62. Plaintiff's brother tried to hand the phone to Officer HYDE.

63. Officer HYDE refused to take the phone and said that plaintiff was under arrest.

64. He also stated, in sum and substance, "tell her to meet him at the precinct and bring the vehicle's registration and her security guard license."

65. Officer HYDE put plaintiff in the patrol car.

66. Plaintiff was taken to the 46th Precinct.

67. Plaintiff was charged with violating N.Y.P.L. § 265.01(1), criminal possession of a weapon in the 4th degree.

68. Plaintiff was also issued three traffic tickets: one (1) ticket for allegedly violating New York Vehicle Traffic Law § 375-2(a), operating a motor vehicle without headlights; and two (2) tickets for allegedly violating New York Vehicle Traffic Law § 375-12(a)(b), window tints darker than that authorized by law.

69. Ms. Rentas has never received a ticket for the window tints of her vehicle.

70. At the 46th Precinct, plaintiff was searched again, fingerprinted, and then taken to a holding cell.

71. Plaintiff repeatedly explained that his girlfriend owned the vehicle he was driving and her security guard license allowed her to carry the billy club.

72. Ms. Rentas arrived at the precinct approximately 20 minutes after plaintiff and introduced herself to Officer DOE as plaintiff's girlfriend.

73. She provided police officer DOE with her vehicle's registration, proof of insurance, and her security license.

74. After reviewing Ms. Rentas's documents, police officer DOE stated that plaintiff would be issued a desk appearance ticket ("DAT") and released soon.

75. Upon information and belief, plaintiff was eligible to receive a DAT for a 4th degree weapons possession charge that did not involve a firearm.

76. Plaintiff remained in custody several hours later.

77. Ms. Rentas eventually asked police officer DOE why plaintiff had not been released.

78. Officer DOE responded, in sum and substance, "my boss does not want to release him."

79. After learning that plaintiff would not be released, Ms. Rentas left the precinct.

80. At approximately 4 A.M., plaintiff was transferred to Bronx Central Booking.

81. In the early evening of February 6, 2015, Ms. Rentas went to the Bronx criminal court arraignment courtroom.

82. In the arraignment courtroom, she spoke with the Assistant District Attorney ("ADA") handling plaintiff's case.

83. Ms. Rentas explained to the ADA that plaintiff was pulled over and arrested for criminal possession of a weapon while driving her car.

84. She further explained that she was the owner of the weapon plaintiff was charged with possessing.

85. To prove ownership, she showed the ADA her security license, which permitted possession of the billy club.

86. She also provided the ADA with the vehicle's registration and her insurance information.

87. At approximately 11 P.M., plaintiff's case was dismissed, after approximately 24 hours in custody.

88. Plaintiff was never read his *Miranda* rights while in custody.

89. At the time of plaintiff's unlawful arrest, he was on probation.

90. Prior to plaintiff's wrongful arrest, his probation officer had stated that she would grant him an early release because he had not engaged in criminal activity while on probation.

91. As a result of plaintiff's wrongful arrest, his probation officer denied his early release and he was forced serve the entirety of the one year and eight months remaining on his probation sentence.

92. Defendants' conduct caused plaintiff to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, and harm to reputation.

93. Additionally, the tightness of the handcuffs Officer HYDE applied at the scene resulted in an injury to plaintiff's hands and wrists, hindering his ability to work in his trade, construction.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Individual Defendant Officers' Violations of Plaintiff's Fourth, Fifth, and Fourteenth Amendment Rights

94. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

95. In committing the acts and omissions complained of herein, defendants HYDE and DOES acted under color of state law to deprive plaintiff of certain constitutionally protected rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, including, but not limited to:

   a. the right to be free from unreasonable search and seizure;

   b. the right to be free from arrest without probable cause;

   c. the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent;

   d. the right to be free from the lodging of false criminal charges against him by police officers;

   e. the right to be free from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiff's favor;

   f. the right to be free from deprivation of liberty without due process of law; and

   g. the right to equal protection, privileges, and immunities under the laws.

96. In committing the acts and omissions complained of herein, defendants HYDE and DOES breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

97. As a direct and proximate result of defendants HYDE and DOES's deprivation of plaintiff's constitutional rights, plaintiff suffered the injuries and damages set forth above.

98. The unlawful conduct of defendants HYDE and DOES was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### Violations of the New York State Constitution

99. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

100. Such conduct breached the protections guaranteed to plaintiff by the New York State Constitution, including but not limited to, Article 1, §§ 1, 6, 8, 11, and 12, and including the following rights:

   a. freedom from unreasonable search and seizure of his person and property;

   b. freedom from arrest without probable cause;

   c. freedom from use of excessive force;

   d. freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention plaintiff was aware and did not consent;

   e. freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual defendants;

   f. freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiff's favor; and

   g. freedom from deprivation of liberty without due process of law.

101. As a direct and proximate result of defendants' deprivations of plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, plaintiff suffered the injuries and damages set forth above.

## THIRD CAUSE OF ACTION
### Assault and Battery

102. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

103. Defendants HYDE and DOES, without just cause, wilfully and maliciously used physical force against plaintiff causing him injuries.

104. Defendants HYDE and DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for plaintiff's rights, and are therefore liable for punitive damages.

### FOURTH CAUSE OF ACTION
### False Imprisonment

105. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

106. Defendants HYDE and DOES, through the foregoing acts, caused plaintiff to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent.

107. Defendants HYDE and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

### FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

108. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

109. Defendants HYDE and DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused plaintiff to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

110. Defendants HYDE and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

### SIXTH CAUSE OF ACTION
**Negligence**

111. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

112. Defendants HYDE and DOES owed plaintiff a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

113. Defendants HYDE and DOES, through the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

114. All of these acts were performed without any negligence on the part of plaintiff and were the proximate cause of the injuries to plaintiff.

### SEVENTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress**

115. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116. As police officers acting in the performance of their duties, defendants HYDE and DOES owed plaintiff a duty of care.

117. In breach of that duty, defendants HYDE and DOES endangered plaintiff's safety and caused him to fear for his safety.

118. As a result, plaintiff suffered emotional distress.

### EIGHTH CAUSE OF ACTION
**Negligent Hiring, Training, and Supervision Under State Law;
Defendant City of New York**

119. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

120. The City is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants, and/or employees employed and/or the NYPD with regard to their aforementioned duties.

### NINTH CAUSE OF ACTION
*Respondeat Superior*

121. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

122. At all relevant times, defendants HYDE and DOES were employees of the City and were acting within the scope of their employment.

123. The City is therefore vicariously liable under the common law doctrine of r*espondeat superior* for the actions of defendants HYDE and DOES set forth herein.

### DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages from Defendants HYDE and DOES to the extent allowable by law;

(c) attorney's fees;

(d) the costs and disbursements of this action;

(e)   interest; and

(f)   such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 4, 2015

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26 Floor
New York, New York 10016
(212) 490-0400

Myron Beldock
Keith M. Szczepanski

*Attorneys for Plaintiff Joes Suarez Velez*

## VERIFICATION

STATE OF NEW YORK      )
                                         : ss.:
COUNTY OF NEW YORK )

      Joes Suarez Velez, being duly sworn, deposes and says: I am the plaintiff in the within action; I have read the foregoing Verified Complaint and know the contents thereof as they relate to me; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

_____
Joes Suarez Velez

Sworn to before me this
4th day of December, 2015.

_____
Notary Public

KEITH MICHAEL SZCZEPANSKI
Notary Public, State of New York
No. 02SZ6325315
Qualified in Kings County
Commission Expires May 26, 2019